## CORRECTIONS

### HEALTH – AUTHORITY TO CONSENT TO MEDICAL TREATMENT FOR MINORS IN ADULT CONFINEMENT FACILITIES

January 25, 1995

*Honorable James W. Hubbard*
*House of Delegates*

You have requested our opinion whether current law requires State and local adult detention and correctional facilities housing inmates under 18 years of age who are charged as adults or serving sentences as adults to obtain the consent of parents or guardians of these prisoners prior to providing medical care.

For the reasons stated below, we conclude as follows: As a general rule, the physician who is treating a minor held in an adult detention or correctional facility[1] should obtain the consent of the minor's parent or guardian for medical treatment that goes beyond a routine response to common ailments. Under some circumstances, however, a physician may provide more significant forms of medical treatment to a prisoner who is a minor without the consent of the minor's parent or guardian:

1.      Treatment that is necessary to respond to a medical emergency may be provided either with the consent of the minor or without consent.

2.      If the minor is married or the parent of a child, any form of treatment may be provided with the consent of the minor.

3.      Treatment may also be provided for any of the conditions identified in §§20-102(c) and 20-104(a) of the Health-General ("HG") Article, Maryland Code, with the consent of the minor.

---

[1] This opinion is not intended to address issues of consent for treatment of minors in any other institutional settings.

4.     Finally, although the matter is not settled in Maryland, the attending physician may rely on the informed consent of a minor who is reasonably deemed to be mature enough to provide consent for a particular treatment.


## I

### Duty to Provide Needed Medical Treatment

The custodian of a prisoner has a legal duty to safeguard the health of a prisoner.  In part, this legal duty flows from the United States Constitution.  *See Estelle v. Gamble*, 429 U.S. 97 (1976) (Eighth Amendment requires state to provide adequate medical care to prisoners where failure to do so would amount to deliberate indifference to serious medical needs); *Buffington v. Baltimore County*, 913 F.2d 113 (4th Cir. 1990) (due process clause guarantees a pre-trial detainee at least the same right to medical care).  In part, the duty is statutory.  A prisoner in the custody of the Division of Corrections is entitled to "adequate treatment" for an illness.  Article 27, §698.[2]   A pre-trial detainee in the custody of a sheriff or comparable jailor has a right to necessary medical treatment.  Article 87, §§46 and 48 of the Code.  *See generally* 58 *Opinions of the Attorney General* 647 (1973).

However, these statutes do not address the issue of informed consent for treatment.   In general, the fact that a person is imprisoned does not deprive the prisoner of his or her "right to be free from unjustified intrusions into the body, ... the related right to refuse unwanted medical treatment, ... and ... the right to sufficient information to intelligently exercise those rights."  *White v. Napoleon,* 897 F.2d 103, 111 (3d Cir. 1990).  *See Washington v. Harper*, 494 U.S. 210, 221-22 (1990).  To be sure, the State's interest in effective prison administration entitles it to administer some types of treatment without the consent − indeed, over the objection− of a prisoner. *See generally Washington v. Harper*, 494 U.S. at 227.  *See also, e.g., In re Caulk*, 480 A.2d 93 (N.H. 1984) (although prisoner has right under state constitution to prevent unwanted infringement of bodily integrity, state interest in effective prison administration justifies forced feeding of prisoner who would

---

[2] The Division carries out this responsibility by means of a contract with a provider of health care services.

otherwise starve to death).  But cases of this kind are exceptions to the general rule that the doctrine of informed consent applies within jails and prisons, just as it does elsewhere.

Hence, we turn to general principles of law governing consent for medical treatment of minors.

## II

### Consent for Treatment of Minors

Because minors are usually thought to be incapable of adequately assessing all of the pertinent factors involved in making important medical decisions, the traditional common law rule deems minors incapable of consenting to medical or surgical treatment. *See, e.g., Bonner v. Moran,* 126 F.2d 121 (D.C. Cir. 1941); *In re Hudson*, 126 P.2d 765 (Wash. 1942).  "[D]uring the formative years of childhood and adolescence, minors often lack the experience, perspective, and judgment to recognize and avoid choices that could be detrimental to them." *Bellotti v. Baird*, 443 U.S. 622, 635 (1979).  Parents, as natural guardians, have long possessed common law authority to make medical decisions for their children without being appointed by a court. *See generally Parham v. J.R.*, 442 U.S. 584 (1979).

Parental authority under the common law has been codified in §5-203 of the Family Law ("FL") Article, Maryland Code, which delineates the responsibilities of a parent in relation to the child. This section provides that "parents are the joint natural guardians of their minor child" and "the parents of a minor child are jointly and severally responsible for the child's support, care, nurture, welfare and education." *See Middleton v. Middleton*, 329 Md. 627, 633, 620 A.2d 1363 (1993).  While this section does not expressly include medical care within the responsibilities of a parent, the Court of Appeals has held that medical care is indeed embraced within the scope of the broad language used in FL §5-203. *State v. Fabritz*, 276 Md. 416, 348 A.2d 274 (1975), *cert. denied*, 425 U.S. 942 (1976). *See also Craig v. State*, 220 Md. 590, 155 A.2d 684 (1959); *Robey v. State*, 54 Md. App. 60, 456 A.2d 953, *cert. denied*, 296 Md. 224 (1983).

Physicians generally must obtain the consent of the parents before performing any medical treatment on a child.  "When the patient is a minor, the patient is legally below the 'age of consent,'

and the general rule is that a medical practitioner will be liable for treating a minor without the consent of the minor's parents." Danny R. Veilleux, Annotation, *Medical Practitioner's Liability for Treatment Given Child Without Parent's Consent,* 67 A.L.R. 4th 511, 517 (1989). *See also* Ruth R. Faden & Tom L. Beauchamp, *A History and Theory of Informed Consent* 36 (1986). If a child is a ward of the court, these responsibilities devolve upon the guardian. *See Wentzel v. Montgomery Gen. Hosp. Inc.,* 293 Md. 685, 701-02, 447 A.2d 1244 (1982).

In order to make medical treatment decisions for their children, parents are entitled to the same information regarding the risks and benefits of proposed treatment as would be provided to the minor if the minor were competent to make the treatment decision personally. *See Marino v. Ballestas*, 749 F.2d 162 (3d Cir. 1984). *See generally Sard v. Hardy*, 281 Md. 432, 439, 379 A.2d 1014 (1977). Hence, as a general matter, a physician seeking to treat a minor in custody must obtain the informed consent of the minor's parent or guardian prior to providing medical treatment to the minor. This general rule has important exceptions, however, that we discuss in the balance of this opinion.

## III

### Consent by Minor to Treatment

#### A.    *Statutory Authority*

HG §20-102(a) grants to an emancipated minor "the same capacity as an adult to consent to medical treatment ...." An emancipated minor is one who is married or the parent of a child. HG §20-102(a). An emancipated minor is also authorized by statute to execute an advance directive under the Health Care Decisions Act. *See* HG §5-601(b).

In addition, a minor, even if not emancipated, "has the same capacity as an adult to consent to medical treatment if, in the judgment of the attending physician, the life or health of the minor would be affected adversely by delaying treatment to obtain the consent of another individual." HG §20-102(b). Thus, a physician treating a minor prisoner may act on the minor's consent to emergency treatment without obtaining the consent of a parent or

guardian. *See also* Part IV below (emergency treatment without consent).

HG §20-102(c) identifies seven circumstances under which a minor "has the same capacity as an adult to consent" to medical treatment:

> (1) Treatment for or advice about drug abuse;
>
> (2) Treatment for or advice about alcoholism;
>
> (3) Treatment for or advice about venereal disease;
>
> (4) Treatment for or advice about pregnancy;
>
> (5) Treatment for or advice about contraception other than sterilization;
>
> (6) Physical examination and treatment of injuries for an alleged rape or sexual offense; and
>
> (7) Physical examination to obtain evidence of an alleged rape or sexual offense.

Finally, HG §20-104(a) authorizes minors who are 16 years old or older "to consent to consultation, diagnosis, and treatment of a mental or emotional disorder by a physician or a clinic."

### B. Mature Minors

Although the issue has not been resolved by the Maryland courts, a developing body of case law from other jurisdictions and scholarly comment suggest that a minor who can demonstrate that he or she is mature enough to understand the consequences of a medical procedure may give the requisite informed consent. *See generally* Restatement (Second) of Torts §892A (1979) (if person consenting is a child, the consent may still be effective if the child is capable of appreciating nature, extent, and probable consequences of conduct consented to); W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* §18, at 115 (5th ed. 1984) (capacity of minor to consent exists when the minor has the ability of an average person to understand and weigh the benefits of treatment); Rhonda

Cohn, *Minor's Right to Consent to Medical Care*, 31 Med. Trial Technique Q. 286, 290-91 (1985) (minor may consent "if the minor is mature enough to understand the nature and consequences of a medical procedure that is for the minor's benefit and can weigh alternatives to the procedure").

The Illinois Supreme Court, for example, held that "a minor ... who was just months shy of her eighteenth birthday ... and ... [who] the record indicates was mature for her age" was legally authorized to consent to medical treatment. *In re E.G.*, 549 N.E.2d 322, 325 (Ill. 1989). The Illinois court observed that the age of majority "is not an impenetrable barrier that magically precludes a minor from possessing and exercising certain rights normally associated with adulthood." *Id*. According to the court, "mature minors may possess and exercise rights regarding medical care that are rooted in this State's common law." 549 N.E.2d at 326. *See also, e.g.*, *Younts v. St. Francis Hosp. and School of Nursing, Inc.*, 469 P.2d 330 (Kan. 1970) (17 year old able to consent to minor surgery); *Cardwell v. Bechtel*, 724 S.W.2d 739 (Tenn. 1987) (17 year old able to consent to spinal manipulation); *Belcher v. Charleston Area Medical Center*, 422 S.E.2d 827 (W.Va. 1992) (remand to trial court to determine whether 17 year old was able to consent to "do not resuscitate" order). The West Virginia court observed that the issue of "[w]hether a child is a mature minor is a question of fact":

> Whether the child has the capacity to consent depends upon the age, ability, experience, education, training and degree of maturity of judgment obtained by the child, as well as upon the conduct and demeanor of the child at the time of the procedure or treatment ... [and] whether the minor has the capacity to appreciate the nature, risks, and consequences of the medical procedure to be performed, or the treatment to be administered or withheld.

422 S.E.2d at 838. *See also Cardwell v. Bechtol,* 724 S.W.2d at 745.

Because we consider these decisions to be soundly reasoned, we think it more likely than not that Maryland courts would accept the "mature minor" doctrine in an appropriate case. A minor who has been held accountable as an adult for criminal misconduct, for example, would surely be mature enough to understand and consent to, by accepting, the routine care that is an implicit part of institutional confinement.[3] As a practical matter, no real issue of consent arises when the treatment consists of little more than the provision of over-the-counter medication. A health care provider need not be concerned about consent to dispense Tylenol to a minor prisoner who complains of a headache or to apply antiseptic and a bandage to a small cut.

Nevertheless, in the absence of Maryland authority, we suggest that health care providers in the prison setting act cautiously for more serious forms of treatment. If the treatment in question is one for which express, specific informed consent is ordinarily required, the attending physician should first seek to obtain parental consent unless the minor may consent under circumstances specified by statute. For these interventions, reliance on the "mature minor" doctrine should be a last resort, and only then if the physician determines the minor to be mature enough to provide informed consent for the particular procedure in question.

## IV

### Treatment Without Consent

Maryland law codifies the long-accepted principle that health care providers may treat a patient in an emergency without consent. HG §5-607 provides as follows:

> A health care provider may treat a patient who is incapable of making an informed decision, without consent, if:

---

[3] The fact that a minor is prosecuted as an adult does not by itself establish that the minor may make all medical decisions, as if he or she were an adult. Factors other than those related to the minor's judgment and maturity – the nature of the crime, for example – might determine whether the minor is prosecuted as an adult. *See* §§3-804(e) and 3-817(d) of the Courts and Judicial Proceedings Article, Maryland Code.

     (1) The treatment is of an emergency medical nature;

     (2) A person who is authorized to give the consent is not available immediately; and

     (3) The attending physician determines that:

     (i) There is a substantial risk of death or immediate or serious harm to the patient; and

     (ii) With a reasonable degree of medical certainty, the life or health of the patient would affected adversely by delaying treatment to obtain consent.

This provision applies as much in detention or correctional facilities as elsewhere.

**V**

**Conclusion**

In summary, it is our opinion that, as a general rule, the physician treating an imprisoned minor should obtain the consent of the minor's parent or guardian for medical treatment that goes beyond a routine response to common ailments. Under some circumstances, however, a physician may provide more significant forms of medical treatment to a prisoner who is a minor without the consent of the minor's parent or guardian:

1.    Treatment that is necessary to respond to a medical emergency may be provided either with the consent of the minor or without consent.

2.    If the minor is married or the parent of a child, any form of treatment may be provided with the consent of the minor.

3.    Treatment may also be provided for any of the conditions identified in HG §§20-102(c) and 20-104(a) with the consent of the minor.

4. Finally, although the matter is not settled in Maryland, the attending physician may rely on the informed consent of a minor who is reasonably deemed to be mature enough to provide consent for a particular treatment.

J. Joseph Curran, Jr.
*Attorney General*

Jack Schwartz
*Chief Counsel*
 *Opinions & Advice*